**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, 80 F Street, N.W., Washington, D.C. 20001, | ) ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. |
| v. | ) ) |
| DONALD J. TRUMP , in his official capacity as President of the United States 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20035, | ) ) ) ) ) ) ) |
| and | ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT 1900 E Street, N.W., Washington, D.C. 20415, | ) ) ) ) ) |
| and | ) ) |
| JEFF T.H. PON, in his official capacity as Director of the U.S. Office of Personnel Management, 1900 E Street, N.W., Washington, D.C. 20415, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

This is an action brought by the American Federation Of Government Employees

("AFGE") against President Donald J. Trump for his unlawful Executive Orders designed to

interfere with the proper and Congressionally-mandated functioning of federal sector

collective bargaining and employment. In two Executive Orders, both issued on May 25,

2018, President Trump purported to undermine the statutorily-mandated collective bargaining

process and to strip federal employees of civil service protections which are required by

statute. There is no statutory or constitutional basis for these actions, which should be declared

unlawful; their implementation by the Office of Personnel Management should be

permanently enjoined.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action based on 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this District because AFGE is headquartered here,

Defendants' principal offices are located here, and many AFGE-represented employees

adversely affected by the Executive Orders live and work in this judicial district.

## PARTIES

3.      AFGE is a national labor organization and unincorporated association based in

Washington, D.C. AFGE represents approximately 650,000 federal civilian employees in

agencies and departments across the federal government, including in this District. AFGE, on its

own and through its affiliated councils and locals, represents employees within bargaining units

for which AFGE and its councils and locals have been certified as the exclusive representative.

Among other things, AFGE negotiates collective bargaining agreements, arbitrates grievances,

represents employees in formal discussions and investigative examinations, litigates employees'

collective and individual rights before administrative agencies and in court, and generally acts

as federal civilian employees' exclusive representative for the purpose of collective bargaining

with the federal government. AFGE and its affiliated councils and locals are the certified

exclusive representative, under 5 U.S.C. § 7111, of the employees they represent.

4.      Defendant Donald J. Trump is the President of the United States. He is sued solely in his official capacity.

5.      Defendant U.S. Office of Personnel Management ("OPM") is a federal agency headquartered in Washington, D.C. charged with implementing the Executive Orders.

6.      Defendant Jeff T.H. Pon is the Director of OPM ("Director"), located in Washington, D.C. He is sued solely in his official capacity.

## STATUTORY FRAMEWORK

7.      The Civil Service Reform Act ("CSRA"), adopted in 1978, creates the statutory framework for federal employee rights, protections, and labor relations. The CSRA replaced a series of Executive Orders, limited the authority of the President to act autonomously in this field and includes express Congressional determination that collective bargaining on behalf of federal employees is in the public interest. 5 U.S.C. § 7101.

8.      The Federal Service Labor-Management Relations Statute ("FSLMR Statute"), adopted as Chapter 71 of the CSRA, firmly protects the rights of federal employees to form and join unions, and the rights of those unions to bargain collectively over conditions of employment. 5 U.S.C. § 7101(a)(1). In passing Chapter 71 of the CSRA, Congress chose to legislate in an area which previously had been governed by executive authority.

9.      Under the FSLMR Statute, federal agencies and certified labor organizations have a duty to bargain in good faith regarding terms and conditions of employment. 5 U.S.C. §§ 7103(a)(14), 7114(b).

10.     Congress also requires labor organizations and agencies to include a negotiated grievance procedure in every collective bargaining agreement, which must allow for employees

to present their own grievances and for the labor organization to take those grievances to

arbitration if unresolved. 5 U.S.C. § 7121. A grievance is defined by statute as

> any complaint-- **(A)** by any employee concerning any matter relating to the employment of the employee; **(B)** by any labor organization concerning any matter relating to the employment of any employee; or **(C)** by any employee, labor organization, or agency concerning-- **(i)** the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or **(ii)** any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment.

5 U.S.C. § 7103(a)(9).

11.    Against this broad backdrop, Congress specifically and deliberately excluded

only the following matters from negotiated grievance procedures: (1) alleged violations of rules

involving prohibited political activities; (2) retirement, life insurance, or health insurance; (3) a

suspension or removal in the interest of national security; (4) any examination, certification, or

appointment; or (5) the classification of any position which does not result in the reduction in

grade or pay of an employee. 5 U.S.C. § 7121(c).

12.    All other matters fitting within Congress' expansive definition of "grievance" are

properly subject to the negotiated grievance procedure, unless the negotiating parties elect to

exclude other matters. 5 U.S.C. § 7121(a)(2).

13.    The Civil Service Reform Act also established processes for evaluating and

correcting employee performance, and for agencies action to take based on performance

reviews.

14.    Congress directed agencies to develop personnel appraisal systems that "(1)

provide for periodic appraisals of job performance of employees; (2) encourage employee

participation in establishing performance standards; and (3) use the results of performance

appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade,

retaining, and removing employees." 5 U.S.C. § 4302.

15.     Congress further provided that, "[u]nder regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for . . . reassigning, reducing in grade, or removing employees who continue to have unacceptable performance <u>but only after an opportunity to demonstrate acceptable performance</u>." 5 U.S.C. § 4302(c)(6) (emphasis added). The statutorily-mandated "opportunity to demonstrate acceptable performance" is commonly known as a "performance improvement period" or PIP.

16.     Agencies must bargain with unions over conditions of employment to the extent that proposals are not inconsistent with federal law, government-wide statute, or rights that the Statute reserves for agency management. *See* 5 U.S.C. §§ 7103(12),(14); 7106(a); 7117(a)(1). The duration of a PIP is a term and condition of employment, which is commonly subject to bargaining and agreement between AFGE and federal agency employers.

17.     Congress has specifically provided for merit system principles in 5 U.S.C. § 4302(c)(6) and other sections of Title 5.

18.     Congress has also specifically provided that "procedures which management officials of the agency will observe in exercising" specified management rights is a mandatory subject of bargaining. 5 U.S.C. § 7106(b)(2).

19.     The CSRA generally, and the FSLMR specifically, express Congress' intention to occupy the field of federal sector labor relations. Congress expressly limited the President's ability to direct federal sector labor relations via executive order and provided that executive orders cannot be contrary to the Statute. 5 U.S.C. § 7135(b).  However, Congress granted the President <u>limited</u> authority to issue executive orders pursuant to the FSLMR Statute, in two specific areas:

     a.   The President may exclude an agency or subdivision thereof from coverage

under the FSLMR Statute if the agency or subdivision thereof "has as a primary

function intelligence, counterintelligence, investigative, or national security

work." 5 U.S.C. § 7103(b)(1); and

    b.    The President may also issue executive orders suspending provisions of the

FSLMR Statute "with respect to any agency, installation, or activity located

outside the 50 States and the District of Columbia, if the President determines

that the suspension is necessary in the interest of national security." 5 U.S.C. §

7103(b)(2).

20.    Congress empowered the Federal Labor Relations Authority ("FLRA") to "provide leadership in establishing policies and guidance" related to matters under the FSLMR Statute and is responsible "for carrying out the purpose" of the FSLMR Statute. 5 U.S.C. § 7105.

21.    The responsibilities of the FLRA include determining the scope of bargaining appropriate between federal employees and agencies. 5 U.S.C. § 7105.

22.    Congress granted to "the [Federal Labor Relations] Authority, the general counsel, the Federal Mediation and Conciliation Service, the Assistant Secretary of Labor for Labor Management Relations, and the [Federal Service Impasses] Panel" the authority to "prescribe rules and regulations to carry out the provisions" of the FSLMR Statute which apply to those offices. 5 U.S.C. § 7134.

## THE EXECUTIVE ORDERS

23.    On May 25, 2018, President Trump signed three Executive Orders which he asserted would "empower our civil servants", but which instead are designed to empower agency management to act unilaterally in a way not allowed by law since at least 1978. One

6

dealt with the allocation of "official time" for union representation work and was designed to deprive federal employees of full representation in disputes with their employer and to undermine the ability of federal sector labor organizations to negotiate and enforce collective bargaining agreements. That Order is subject to separate litigation in this Court, *AFGE v. Trump,* Case No. 18-cv-01261. The other two Orders, at issue herein, attempt to (a) undermine and interfere with the collective bargaining process itself by, among other things, calling for the unilateral implementation of agency contract proposals and setting artificial and unrealistic time limits on the collective bargaining process; and (b) strip federal employees of the civil service protections which are protected by law and by collective bargaining agreements, including by providing unfettered and unreviewable authority for agencies to terminate represented employees. Taken together, these Orders represent a fundamental assault on the federal collective bargaining process which has been in effect for four decades.

**The Bargaining Order.**

24.     Executive Order No. 13,836 is titled "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining." 83 FR 25329. For ease of reference, this Executive Order is referred to herein as the "Bargaining Order." A copy of the Bargaining Order is attached hereto as Exhibit A.

25.     The Bargaining Order sets forth, in Section 5(a), a presumptive time limit of 4 to 6 months for collective bargaining, after which time agencies are directed to consider paths toward imposing contract proposals through the Federal Service Impasses Panel.

26.     The Bargaining Order also provides, in Section 5(c)(ii), that if an agency believes that a collective bargaining representative is delaying any stage of bargaining, without first proceeding to a ruling by the FLRA, every agency "shall…propose a new contract,

memorandum, or other change in agency policy and implement that proposal if the collective

bargaining representative does not offer counter-proposals in a timely manner." Section 5(c)(ii).

This provision directs and purports to authorize agencies to engage in unilateral implementation

of bargaining proposals, contrary to good-faith bargaining as required under the FSLMR Statute.

And Section 5(d) requires that agencies shall not defer to the FLRA process in the event they

file an unfair labor practice complaint during negotiations but shall proceed on the accelerated

and unilateral schedule set forth in the Bargaining Order.

27.     Sections 5(a) and 5(d) are contrary to 5 U.S.C. § 7114(b)(3) because the Statute

does not provide that the President can dictate how long or when the parties will meet to

bargain, nor does it allow the President to dictate whether the filing of a ULP will or will not

delay negotiations.  The Statute requires the parties to meet as frequently as needed to avoid

unnecessary delays.  Put another way, the Statute does not permit the President to determine in

advance what duration of collective bargaining may "ordinarily be considered reasonable."

Congress left such determinations to the parties jointly in the first instance and to the FLRA in

the second.

28.     Section 5(c) is contrary to 5 U.S.C. § 7114(b) because it arrogates to agency

employers the ostensible authority to unilaterally implement a collective bargaining proposal

based solely on the agency's determination that a collective bargaining representative has not

offered a counter proposal quickly enough.

**The Removal Procedures Order.**

29.     Executive Order No. 13,839 is titled "Promoting Accountability and

Streamlining Removal Procedures Consistent with Merit System Principles." 83 FR 25329. For

ease of reference, this Executive Order is referred to herein as the "Removal Procedures Order",

and is attached hereto as Exhibit B.

30.     The Removal Procedures Order purports to regulate by Presidential fiat multiple areas that are mandatory subjects of bargaining, including the scope of grievable employment actions and the timing of performance improvement periods. Specifically,

    a.   In Section 3, President Trump orders federal agencies "to exclude from the application of any [negotiated] grievance procedures … any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance."

    b.   In Section 4(a), President Trump orders federal agencies to likewise exclude from the grievance procedures "the assignment of ratings of record" and disputes over "any form of incentive pay, including cash awards; quality step increases; or recruitment, retention or relocation payments."

    c.   In Section 4(b), President Trump prohibits any federal agency from making "any agreement … [t]hat limits the agency's discretion to apply Chapter 75 procedures [regarding adverse employment actions] to address unacceptable performance of an employee" or which "limits the agency's discretion to remove an employee … without first engaging in progressive discipline."

    d.   In Section 4(c) President Trump directs that "no agency shall … generally afford an employee more than a 30-day period to demonstrate acceptable performance …, except when the agency determines in its sole and exclusive discretion that a longer period is necessary to provide sufficient time to evaluate an employee's performance."

31.     On May 25, 2018, the Office of Personnel Management issued a press release and

conducted phone calls with labor organizations indicating its view that the Executive Orders were legally valid and would be implemented.

## CLAIMS FOR RELIEF

### COUNT ONE

*Section 5 of the Bargaining Order*
*Violates the Separation of Powers and is Ultra Vires*

32.    Plaintiff reasserts and incorporates the assertions contained in paragraphs 1 through 31 herein.

33.    Federal agencies have a statutory obligation to bargain in good faith, which includes a duty to meet at reasonable times as frequently as may be necessary to reach an agreement. 5 U.S.C. § 7114(b).

34.    The FLRA, and not the President, has the statutory authority to determine claims that a party in collective bargaining is acting in compliance with its duty to bargain in good faith.

35.    The presumptive time limits, and the directive and asserted authorization to unilaterally implement contract proposals on an accelerated schedule and to sidestep the statutory unfair labor practice process, imposed by Sections 5(a), 5(c)(ii) and 5(d) of the Bargaining Order, are contrary to the obligations mandated by Congress in 5 U.S.C. § 7114(b), are outside of the President's authority to issue and are contrary to the statutory duty to bargain in good faith. Also

36.    This section of the Bargaining Order violates the Separation of Powers and is *ultra vires*.

## COUNT TWO

*Section 3 of the Removal Procedures Order*
*Violates the Separation of Powers and is Ultra Vires*

37.     Plaintiff reasserts and incorporates the assertions contained in paragraphs 1 through 31 herein.

38.     Section 3 of the Removal Procedures Order provides that "agency heads shall endeavor to exclude from the application of any grievance procedures … any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance."  These efforts "shall" include refusing to bargain over such provisions and proceeding to the FMCS and Federal Services Impasses Panel to seek imposition of such terms.

39.     Congress in 5 U.S.C. § 7121(c) excluded only five specific items from the grievance process; Section 3 purports to go beyond this carefully crafted list and also exclude disputes regarding the termination of federal employees. By prohibiting all agencies from bargaining over the application of the grievance procedure to terminations, and by directing that they bargain to impasse over that position, the EO exceeds the authority of the President by interfering with the duty to bargain in good faith, and contravening Congress' determination of which issues must be excluded from the grievance procedures.

40.     This section of the Removal Procedures Order violates the Separation of Powers and is *ultra vires*.

## COUNT THREE

*Section 4(a) of the Removal Procedures Order*
*Violates the Separation of Powers and is Ultra Vires*

41.     Plaintiff reasserts and incorporates the assertions contained in paragraphs 1 through 31 herein.

42.     Section 4(a) provides that

"no agency shall: (a) subject to grievance procedures or binding arbitration disputes concerning: (i) the assignments of ratings of record; or (ii) the award of any form of incentive pay …; quality step increases; or recruitment, retention or relocation payments."

43.     This directive is aimed at securing unilateral and unreviewable authority in federal agencies to rate employee performance as the basis for employment decisions and to make or deny "any form" of pay outside of the civil service pay scale ("incentive pay", "step increases" and "recruitment [and] retention … payments").

44.     Congress in 5 U.S.C. § 7121(c) excluded only five specific items from the grievance process; Section 4(a) purports to exclude ratings of record, incentive pay, step increases and retention and relocation payments. By prohibiting all agencies from bargaining over the application of the grievance procedures to these subject areas, and by directing that they bargain to impasse over that position, the EO exceeds the authority of the President by interfering with the duty to bargain in good faith, and contravenes Congress' determination of which issues must be excluded from the grievance procedures.

45.     This section of the Removal Procedures Order violates the Separation of Powers and is *ultra vires*.

## COUNT FOUR

*Section 4(b) of the Removal Procedures Order*
*Violates the Separation of Powers and is Ultra Vires*

46.     Plaintiff reasserts and incorporates the assertions contained in paragraphs 1 through 31 herein.

47.     Section 4(b) of the Removal Procedures Order prohibits any federal agency from making "any agreement … [t]hat limits the agency's discretion to apply Chapter 75 procedures [regarding adverse employment actions] to address unacceptable performance of an employee" or which "limits the agency's discretion to remove an employee … without first engaging in progressive discipline."

48.     This provision conflicts with 5 U.S.C. § 7106(b)(2), which provides that

> "Nothing in this [Management Rights] section shall preclude any agency and any labor organization from negotiating … (2) procedures which management officials of the agency will observe in exercising any authority under this section."

49.     By prohibiting agencies from bargaining over the procedures which management will observe in disciplinary actions, Section 4(b) violates Congress' mandate that such procedures are negotiable.

50.     This section of the Removal Procedures Order violates the Separation of Powers and is *ultra vires*.

## COUNT FIVE

*Section 4(c) of the Removal Procedures Order*
*Violates the Separation of Powers and is Ultra Vires*

51.     Plaintiff reasserts and incorporates the assertions contained in paragraphs 1 through 31 herein.

52.     Section 4(c) of the Removal Procedures Order directs that "no agency shall . . .

generally afford an employee more than a 30-day period to demonstrate acceptable performance …, except when the agency determines in its sole and exclusive discretion that a longer period is necessary to provide sufficient time to evaluate an employee's performance."

53.      Section 4(c)'s declaration that extensions of PIPs beyond 30 days shall be left to the "sole and exclusive discretion" of the agency employer conflicts with Section 7106 of Title 5. Congress did not include the appropriate length of a PIP in its list of non-negotiable, reserved management rights in Section 7106, and the length of PIPs are routinely negotiated by the parties through collective bargaining and vary in length to account for the particularities of their agency and unit.

54.      In addition, Section 4(c) improperly usurps power that Congress intended the Federal Labor Relations Authority to exercise: the power to determine what aspects of PIPs are the proper subject of bargaining.

55.      This section of the Removal Procedures Order violates the Separation of Powers and is *ultra vires*.

## RELIEF REQUESTED

WHEREFORE, AFGE prays that this Honorable Court enter an ORDER:

(1)      Declaring that Section 5 of the Bargaining Order is *ultra vires* and contrary to 5 U.S.C. §7114(b);

(2)      Declaring that Sections 3 and 4 of the Removal Procedures Order are *ultra vires* and contrary to 5 U.S.C. §§ 7106 and 7121;

(3)      Enjoining the defendants from implementation of Section 5 of the Bargaining Order and Sections 3 and 4 of the Removal Procedures Order;

14

(4)     Granting plaintiff attorney's fees and costs; and

(5)     Granting such other relief as this Court finds necessary and proper.

Respectfully Submitted,


_Jeffrey A. Bartos_____
Jeffrey A. Bartos
D.C. Bar No. 435832
John J. Grunert
D.C. Bar No. 1019791
Guerrieri, Bartos & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 624-7400
Facsimile: (202) 624-7420
jbartos@geclaw.com
jgrunert@geclaw.com


Gregory G. Watts (Bar No. 1000412)
Assistant General Counsel
American Federation of Government Employees
80 F Street NW
Washington, DC 20001
202-639-6424
wattsg@afge.org


Dated:  June 22, 2018