UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 18-cv-1475 (KBJ) |
| v. | ) ) | |
| DONALD J. TRUMP, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

On May 25, 2018, President Donald Trump issued three executive orders "relating to the administration of the federal civil service and the rights of federal employees to engage in collective bargaining." *AFGE v. Trump*, 318 F. Supp. 3d 370, 379 (D.D.C. 2018); (*see also* Compl. ¶ 23, ECF. No. 1). The American Federation of Government Employees, AFL-CIO ("AFGE") promptly filed a complaint challenging the validity of certain provisions of one of those orders (*see* No. 18-cv-1261 (hereinafter the "Initial Action"), Compl., ECF No. 1), and numerous other federal employee unions filed additional lawsuits challenging the validity of identified provisions of all three executive orders, *see AFGE*, 318 F. Supp. 3d at 379. This Court consolidated the cases (*see* Initial Action, Minute Orders of June 15 and 19, 2018), and on August 25, 2018, after "work[ing] diligently to sort out, and resolve, the myriad complicated and contentious issues" involved in the consolidated cases, *AFGE*, 318 F. Supp. 3d at 380, the Court issued an opinion granting in part and denying in part both

sides' cross-motions for summary judgment, and enjoining the Executive Branch to disregard certain provisions of all three executive orders, *see id.* at 381–82.  Defendants have filed an appeal (*see* Initial Action, ECF No. 62), which remains pending to date.

Mere days after this Court consolidated AFGE's Initial Action with the other cases discussed above, AFGE filed another complaint, seeking to challenge the validity of certain provisions of the two executive orders that it chose not to address in the Initial Action.  (*See* Compl. (filed June 22, 2018) (hereinafter the "Instant Action").)  AFGE expressly acknowledged that the claims it seeks to litigate in the Instant Action "grow[] out of the same event or transaction" as the claims it made in the Initial Action, and also that all of the consolidated cases "involve[] common issues of fact"; indeed, it filed both a Notice of Related Case in the Instant Action (*see* Instant Action, ECF. No. 3) and a Notice of Filing in the Initial Action (*see* Initial Action, ECF No. 24) that state as much.  However, AFGE further asserted that it did *not* "presently anticipate seeking consolidation of [the Instant Action], case number 18-475, with [the Initial Action]" (*see* Initial Action, Notice of Filing at 1)[1]—a puzzling position that AFGE expressly reiterated in response to the Court's subsequent Order to Show Cause as to why the Instant Action should not be consolidated with the Initial Action and the other related cases that were collectively pending before the Court at that time (*see* Instant Action, Minute Order of August 20, 2018; *see also* Instant Action, Pl.'s Resp. to Order to Show Cause ("Resp. to OSC"), ECF No. 9, at 5 (arguing that consolidation of the Instant Action with the Initial Action and other cases would be "premature" and

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

"inappropriate" given that "there is not a complete overlap of AFGE's claims here with the claims pending in the consolidated cases").

Before this Court at present is Defendants' motion to dismiss AFGE's complaint, or in the alternative, to stay this case pending a final, non-appealable judgment in related case *AFGE v. Trump*, which primarily maintains that the Instant Action should be dismissed on claim-splitting grounds. (*See* Instant Action, Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 6.) Specifically, Defendants contend that the well-settled prohibition against claim-splitting bars AFGE from maintaining the present lawsuit (*id*. at 1), and for the reasons explained below, this Court agrees. Accordingly, Defendants' motion to dismiss is **GRANTED**, and the Instant Action is **DISMISSED**. A separate Order consistent with this Memorandum Opinion will follow.

I.

In *AFGE v. Trump*, this Court considered—and resolved—five cross-motions for summary judgment that presented a host of arguments regarding a variety of legal issues concerning the three executive orders that President Trump issued on May 25, 2018, including the question of whether the President lacked authority to issue certain provisions of these executive orders, as AFGE and the other plaintiff Unions contended. *See AFGE*, 318 F. Supp. 3d at 380. As relevant here, by consolidating the Unions' cases and considering the summary judgment motions collectively, the Court made clear that it was effectively treating the four separate actions and related summary judgment motions "as one." *Id.*; *see also id.* (observing that, among other things, "the Unions *collectively* contend that: (1) the President has no statutory or constitutional authority to issue executive orders pertaining to the field of federal labor relations; [and] (2) the

challenged provisions conflict with particular sections of the [Federal Service Labor-Management Relations Statute ("FSLMRS")] in a manner that abrogates the Unions' statutory right to bargain collectively" (emphasis added)).

Notably, the *only* claims that AFGE made in the context of the Initial Action concerned Executive Order number 13837 (the "Official Time Order") (*see* Initial Action, Compl. ¶¶ 1, 2), which, according to AFGE, sought "to impermissibly rewrite portions of the [FSLMRS]" (*id.* ¶ 2). AFGE's complaint specifically assailed sections 4(a)(v), 2(j), 3(a), and 4(a)(ii) of the Official Time Order, alleging that section 4(a)(v) "is void and contrary to the First Amendment"; sections 2(j) and 3(a) "are *ultra vires* and contrary to 5 U.S.C. § 7131"; and section 4(a)(ii) is "*ultra vires* and contrary to 5 U.S.C. § 7131 and Chapter 71[.]" (*Id.* at 14.)

In the Instant Action, AFGE contends that Executive Orders number 13836 (the "Bargaining Order") and 13839 (the "Removal Procedures Order") also contain faulty provisions (*see* Instant Action, Compl. at 10–14), and AFGE further insists that it brings claims now that were not specifically challenged in any of the consolidated cases (*see* Resp. to OSC at 3 n.3). With respect to Defendants' claim-splitting argument, AFGE argues that it is entitled to litigate its claims concerning the Bargaining Order and the Removal Procedures Order in the context of the Instant Action because, even if these claims "overlap[]" with the claims raised in the consolidated cases, AFGE challenged only the validity of certain provisions of the Official Time Order in its earlier case (*see* Instant Action, Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 8, at 8), and the Court did not actually address AFGE's current claims regarding the Bargaining Order and the Removal Procedures Order in its *AFGE v. Trump* opinion (*id.*;

*see also id.* at 9.)[2] Defendants counter that it is precisely because both of AFGE's cases "involv[e] the same subject matter" that AFGE cannot bring these claims now, given that it had every opportunity to make these claims in the context of the Initial Action. (Defs.' Mot. at 5 (quoting *Hudson v. AFGE*, 308 F. Supp. 3d 388, 394 (D.D.C. 2018)).) Defendants' argument is clearly correct, for the reasons explained below.

## II.

It is well established that "a plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (quoting *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980)). This disfavored practice is known as "claim-splitting," and it occurs when a plaintiff files a second lawsuit that concerns the same cause of action as the plaintiff's first lawsuit, such that it "would be precluded under *res judicata* analysis" by a final judgment in the first matter. *Hudson*, 308 F. Supp. 3d at 394 (internal quotation marks and citation omitted). Moreover, it is clear beyond cavil that "*[r]es judicata* bars further claims by parties based on the same cause of action on any ground for relief which the parties already have *had an opportunity to litigate*, even if they chose not to exploit that opportunity." *Id.* (emphasis added) (internal quotation marks, citations, and alterations omitted); *see also Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002); *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).

"Whether [or not] two cases implicate the same cause of action turns on whether

---

[2] Defendants disagree, arguing that the claims AFGE attempts to raise now "were *actually* litigated [in the consolidated cases] because they were raised by other Union Plaintiffs[.]" (Def.'s Mot. at 5 (emphasis in original).)

they share the same nucleus of facts[,]" *Hudson*, 308 F. Supp. 3d at 394 (internal quotation marks and citation omitted), and courts evaluate various factors to make this determination. Such factors include "whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding and usage." *Ananiev v. Freitas*, 37 F. Supp. 3d 297, 309 (D.D.C. 2014) (internal quotation marks and citation omitted), *aff'd* 587 Fed. App'x 661 (D.C. Cir. 2014); *see also* Restatement (Second) of Judgments § 24 (referring to "a transaction, or series of connected transactions" rather than a "nucleus of facts"). Thus, although "[t]he term ['cause of action'] has been given varied treatment depending largely on the facts in each case," *U.S. Indus., Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (internal quotation marks and citation omitted), courts have concluded that two causes of action are the same where, for example, the complaints at issue pertain to "various" breach-of-contract claims that are all related to one construction project, *id.* at 206; or the claims arise out of one "widespread mortgage scam[,]" *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 91 (D.D.C. 2009) (internal quotation marks and citation omitted); or the second complaint arises out of "[t]he same set of events that served as the basis for" the first action's employment discrimination claims, *Polsby v. Thompson*, 201 F. Supp. 2d 45, 50 (D.D.C. 2002).

### III.

The claims that AFGE makes in its two cases unquestionably "involv[e] the same subject matter" as the Initial Action and consolidated complaints, *Baird*, 792 F.3d at 171 (internal quotation marks and citation omitted), which compels the conclusion that

the prohibition against claim-splitting bars the instant case. As noted above, the three executive orders that AFGE and the other plaintiff Unions challenged in the consolidated cases form one "nucleus of facts" that the Court treated as such without objection (*see* No. 18-cv-1348, Order for Consolid., ECF No. 23, at 1 (ordering the numerous cases challenging different aspects of the three executive orders consolidated because, among other things, "the claims in each case *arise from a common nexus of fact*" (emphasis added))), and AFGE readily admits that the claims it makes in the Instant Action arise from this same corpus (*see* Instant Action, Notice of Related Case at 1). What is more, the facts involved in AFGE's two separate actions "form a convenient trial unit," *Ananiev*, 37 F. Supp. 3d at 309 (internal quotation marks and citation omitted), which is precisely why all concerned agreed that these challenges to the three executive orders should be consolidated. And AFGE's instant claims are substantively no different than the rest; they could easily have been raised and resolved alongside those other challenges.

      Thus, AFGE was mistaken to suggest that it would be "prejudice[d]" if the Court considered the allegations it makes in the Instant Action at the same time as AFGE's other substantively similar challenges to the President's executive orders. (Resp. to OSC at 1.) Nor can AFGE be heard to argue that treating its two cases "as a unit" for the purpose of Defendants' claim-splitting motion—and thus dismissing the instant action as improper—fails to "conform[] to [AFGE's] expectations," *Ananiev*, 37 F. Supp. 3d at 309 (internal quotation marks and citation omitted), when it is patently clear that the parties foresaw the possibility of consolidating the Instant Action with the Initial Action and the other consolidated cases "for the purpose of simply applying any

7

summary judgment order in the consolidated cases to AFGE's claims in this case" (Resp. to OSC at 1), and AFGE now seeks to benefit from this Court's summary judgment ruling with respect to the very claims that it intentionally withheld at the moment this Court considered the substantively similar challenges that its prior ruling addressed.  (*See* Instant Action, Joint Status Rep., ECF No. 10, at 1 ("AFGE submits that the Court's reasoning, findings, and conclusions in [*AFGE*, 318 F. Supp. 3d 370,] should be applied to this action and that a corresponding final order should therefore issue in this action.").)

It is also significant that AFGE has offered no reason *why* it opted to challenge the provisions of only one of the three executive orders in the first instance; it points to no impediment to doing so, and thus, it indisputably "had an opportunity to litigate" the claims it seeks to raise now.  *Hudson*, 308 F. Supp. 3d at 394 (internal quotation marks and citation omitted).  To be specific, AFGE could have amended its complaint in the Initial Action to make the claims it brings today, or at the very least, it could have consented to the consolidation of the Instant Action with all of the other challenges to the three executive orders that this Court was considering in the context of the consolidated cases, but for whatever reason, AFGE "chose not to exploit that opportunity."  *Id.* (internal quotation marks and citation omitted).  And under the circumstances presented here, this strategic miscalculation is especially unfortunate: this Court has now issued a final judgment in AFGE's Initial Action, which means that AFGE has forfeited the right to bring these claims at all.  *See Drake*, 291 F.3d at 66 ("[U]nder *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that

action." (emphasis in original) (internal quotation marks and citation omitted)); *Hardison*, 655 F.2d at 1288 ("[T]he parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not.").

IV.

The two actions that AFGE has filed in this Court arise out of the same cause of action: they both seek to challenge provisions of President Trump's May 25th executive orders concerning federal collective bargaining rights.  For unknown reasons, AFGE decided to attack only one of the three executive orders in its Initial Action, and it now seeks to assail the two other executive orders in the context of a separate case, notwithstanding this Court's consideration and resolution of the other pending legal claims related to this same nucleus of facts (including the claims brought in AFGE's initial case).  The well-established rule against claim-splitting plainly prevents AFGE from raising the belated, related claims that it seeks to litigate now.  Accordingly, and as set forth in the accompanying Order, Defendants' motion to dismiss is **GRANTED**, and AFGE's action is **DISMISSED**.

DATE:  November 16, 2018            *Ketanji Brown Jackson*
                                    KETANJI BROWN JACKSON
                                    United States District Judge